Judge Buckrer delivered
the opinion of the court.
On the 16th of June, 1812, Matthew Lyon, at that timo a resident of Caldwell county, in this state, conveyed by deed to his son 'Chittenden Lyon, his estate real and personal, omitting to specify each particular tract of land, and article of personal property. The deed was executed at the city of New Orleans. The consideration stated, was an engagement by the son, to pay T. C. Wright about $1200Q, to Libbe and Carnes $2000, and $2000 paid to tire grantor. Four days thereafter, he drew a bill of exchange on himself, for $1592 29 cents, payable on the 1st of November, in that' year lo J. Monroe, at the bank of Washington,in tf.e district of Columbia, which having been endorsed to M. H. and N. Wickliffe, was presented at the hank, and duly protested for non-payment. On the return of M. Lyon to Kentucky, sup, posing that the deed would be ineffectual to pass the property, he executed to the same individual a second deed, dated the 3d of September, 1819, for the same property and expressing the same consideration.
This latter deed also embraces some other property to-wit: two keel boats, a printing press and types, some books and goods, a vessel then on the stocks, and timber, and_ some other personal property. The consideration stated, was an agreement by C. Lyon, with his father, under his hand and seal, to pay M. H. Wickliffc, a note executed by the grantor, to said Wickliffe, in New Orleans, in the preceding month of June, amounting to about $-1700. The deeds were admitted to record, in the county of Caldwell.
On the day preceding the execution of the last deed, M. Lyon addressed M. II. Wickliffe by letter, stating a series of misfortunes which had lately befallen him, and the fact of the conveyance of his property, to his son, to pay a debt, which he said, be owed to him, and upon agreement by the latter, to pay certain debts, among which, was that clue tp Wickliffe. As tbe-rea *85 .■ions which induced him to take this step,'lie, says, “the ravages of the law would have cut this property to a trifle, and left my debts principally unpaid. Poor or rich, I will live and die, with a good conscience and an honest man
On the ’2d of November, 1813, C. Lyon ajso wrote to- Wickliffe. In his letter, he acknowledges the • eceipt of a letter from him, and adds, “with respect to the debt my father owes you, his misfortunes have been so greai and unexpected, and his business is so much deranged, 1 cannot say, when it will be in our powe to discharge so large a sum.” He then offers to let Wickliffe have debts on different persons, which he points out, and invites him to send on freight, in a boat, which he, Lyon was preparing for Orleans, such articles as Wickliffe might think prope-, which ¡rnght be settled in that way, The oiler, as to the freight was accepted, and in that way .$¿283, of the debt due from M. Lvon was discharged.
On the 7th of May, 1818, M. ÍL and N. Wickliffe, filed their bill in chancery, in the Caldwell circuit court against M. and C. ) .yon setting forth the above facts, and charging, that the conveyances to C. Lyon were made to defraud the creditors of M. Lyon; that the former had taken the whole of the property conveyed, into possession, and had from the proceeds of the sale of a Small part of it, paid the debt due to Wright, and thus the remainder was more than suilicient to pay the debt alleged to he due to Libbe and Carnes, and the amount of that due to them.
They further allege, that the defendants knowing the justice'of their demand, had repeatedly, jointly and severally, promised to pay it, but had as often failed. They say that they know not whether they should consider the defendants as partners, in the creation of the debt to them, or that C. Lyon should be viewed as a trustee holding the property conveyed for the payment of the debt. They pray for the amount of the bill of exchange, damages, costs, &c. and should the court be of opinion, -that C. Lyon occupied the attitude of trustee, that so much of the property conveyed to him, as should be necessary, might be sold, in discharge of iheir demand, and for general relief.
*86 C. Lyon answered, denying fraud,but admitting that Iris father had drawn the bill of exchange in consideration of Whiskey purchased from Wickliffes.
He says, that the @2000 mentioned in the deeds as paid by him to his father, was for money due to him for services rendered, after he had arrived at full age; and for a boat load of produce sold by him to his father; that lie had paid the debt due to Wright, and intended to pay that due to Libbe and Carnes. He says, that he had bound himself to his co-defendant to pay the debt due to the complainants; but that by a subsequent agreement between them, his father had exonerated him from the contract by a release, in consideration of his having paid other debts to a much larger amount, as would appear by a paper which he exhibits. He denies, that he was ever the partner of his co-defendant..
M. Lyon also answered giving a long history of the causes which led to his inability to pay his debts, and making similar statements to those made by C. Lyon, as to the contracts between him and his son.
He says, that when he drew the bill of exchange which was endorsed to the complainants, he had other property to a large amount, besides that conveyed to his son, and particularly, a vessel then at Orleans with* the load. He admits that he paid Wright about .f6000 for which he says, his son had reimbursed him, by the payment of other debts to that amount. He also, says that feeling great anxiety to discharge the debt due to the complainants, he had made the contract with.-C.. Lyon to pay it; but being afterwards pressed by debts due to others, more needy, he had released him, from his engagement, in consideration of his having paid to those creditors a much larger sum, and concludes by pleading the statute of limitations, to the demand of the complainants. Matthew Lyon having died, the suit was revived against .his heirs.
Upon a hearing of the caus.e, the circuit court dismissed the bill absolutely. To reverse the decree, the plaintiffs prosecute this writ of error.
It is somewhat uncertain from the bill, in what attitude, the plaintiffs in error intended to present themselves to the court; whether as complainants seeking a cancellation oí the deeds from M. Lyon to his son, or *87 as demanding a decree for execution of a trust. Rut it is unimportant, because, in either point of view, it is entire])- clear, 1l\nt they were not entitled to the relief sought.
Fraudulent conveyances .are obligator}upon tl\e grantor A craiito*) whose claim in purely legal, must have obtained a judgment and had an execution thereon, returned uno pro perty found,” before he cna maintain a bi]li0 bet "deed,
Considering them in the first point of view, the fact, that they were not judgment creditors presents an insuperable bar, to a decree vacating the conveyances on account of fraud. The doctrine is too well settled,' to permit it to be doubted, that fraudulent conveyances are obligatory on the grantor; and are bad as to two descriptions of persons only, purchasers for a valuable consideration, without notice, and creditors; and that to enable a creditor, as such, lo procure a decree can celling deeds of conveyance as fraudulent, he must, if his demand is purely legal, shew his judgment and execution returned “no property found.”
For á citation of various authorities on this point; see the case of Halbert, &c. vs. Grant, IV Mon. 581.
If the claim be such, as the chancellor may properly entertain jurisdiction of, in the first instance, such for example, as for a rescisión of a fraudulent contract, he may, and upon a proper case presented, ought to remove, all obstacles, which might otherwise prevent the enforcement of the demand. In this case, it cannot be reasonably insisted upon, that the demand, upon a protested bill of exchange, is of an equitable character. It may be, and indeed from the answers of Matthew and C. J yon, it seems, that the two deeds embraced the whole of his property, and therefore it may be urged that it was useless to sue at law, and recover a judgment, which could not be enforced without the aid of the chancellor.
The same remark may he as well applied previous to a judgment, to most cases of fraudulent conveyances, because tie properly conveyed in fraud of creditors, is usually all that the grantor had, which could be reached by execution.
That the plaintiffs in error may have been induced to delay ihc institution of suit by professions of honest intentions by the defendants or eithei of them, and a solicitude to discharge (lie debt, until it was barred by the statute of limitations cannot convert their claim, which was purely legal, into a matter, proper for the jurisdiction of .a court of chancery. If. as alleged. *88 Chittenden I .you bad promised ihem lo be answerable for it, and such promise was not in writing, it cannot be enforced at Jaw or in chancery. If it was evidenced by a note or memorandum in writing, a common law eouri, could alone afford redress for iis violation. It is therefore, unnecessary to determine, whether the deeds fromM. Lyon to his co-defendant were fraudulent or not, .as that is a question which cannot be properly made, in an attempt to have them cancelled in a court of chancery, until after a judgmental law has been obtained, and execution with the proper return, been exhibited.
As to the ground assumed, that C. Lyon should be considered as a trustee for the plaintiffs, it cannot be sustained. They seem to he, as has been remarked, at a loss, whether to view him in that light. We should not, however, regard that, if (he statements in the bill} supported by proof, would shew, that in equity, he ought to be so considered. But there is nothing to warrant such a conclusion, It is clear, that when those deeds were executed, the complainants were not apprized of them, nor do they seem, at any subsequent time, at least, not until the institution of ibis suit, to have consented to, or relied-upon them. Indeed, it should not be overlooked, that they, even at this time, charge that they are fraudulent. Had the deeds been in form, conveyances,to C. Lyon, as'trustee,for the benefit of creditors, such of them as did not request, or after-wards consent to them, could not be bound by them. McKinley,&c. vs. Combs, &c. I Mon. 105. They are absolute on their faces; and them is not the feature of a trust to be found in either of them, unless the recitals, that the grantee had undertaken, in writing, under his hand and seal, to pay the debts named, created it; and we arc not of opinion, that such an effect, can, with propriety be ascribed to them. The recitals moreover, so far as either of the plaintiffs-in error are concerned, relate not to the bill of exchange for .9:1592 29 cents, but to a note for about $1700. Is this a mere misde-scription in the deed, of the demand, for which a decree is sought? Or was a note for that amount actually-executed? The record leaves us without any means of ascertaining-. No explanation on this point is attempted to be given. Be this, as it may, it cannot affect the case as now presented. The obligation by C. Lyon to his father, grew out of a contract, to which they alone *89 were parties, and they had as unquestionable a right, the very moment after it was made, to cancel it; as M. Lyon would have had to restore to him, the consideration, had it been actually advanced.
Wickliffe and Wooley, for plaintiff; Monroe, fon defendant.
Wherefore, as a court of chancery could not properly entertain jurisdiction of the case as exhibited in the bill, the decree is affirmed with costs.